**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa M. Canales,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-17-00993-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Melissa M. Canales's ("Plaintiff") appeal from the Social Security Commissioner's ("Commissioner") denial of her application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. On appeal, Plaintiff raises three claims of error: (1) the Administrative Law Judge's ("ALJ") finding that Plaintiff could perform past relevant work was unsupported by the medical evidence; (2) the ALJ did not give adequate reasons for discrediting Plaintiff's pain and symptom testimony; and (3) the ALJ did not give adequate consideration to all of the medical opinion evidence. Plaintiff asks this Court to grant further administrative proceedings. (Doc. 21 at 3). The Court now rules on Plaintiff's appeal.

**I.    Background**

Plaintiff was born July 26, 1973. (Doc. 21 at 2); (Doc. 22 at 3). She has a high school education and completed training as a medical assistant. *Id.* Plaintiff's past relevant work includes: home attendant, cashier, security guard, pizza maker and store

clerk. (Doc. 16-3 at 34). Plaintiff claims that she suffers from an extensive list of impairments, including: carpal tunnel in both wrists, lupus, fibromyalgia, arthritis, diabetes, neuropathy, depression, anxiety and other various issues that cause severe and chronic pain. (Doc. 21 at 2).

On August 31, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 31, 2012. (Doc. 16-3 at 25). Plaintiff claims that she has not been able to work due to chronic pain and both physical and mental impairments. (Doc. 21 at 1). After her claims were denied initially and upon reconsideration, on December 11, 2014, an ALJ heard testimony from Plaintiff, who was represented by a non-attorney representative, and from a vocational expert. *Id*. The ALJ issued a decision on February 3, 2015, finding Plaintiff was not disabled under the Act. (Doc. 16-3 at 25–35). The Appeals Council denied review on June 29, 2016, making the ALJ's decision to deny benefits the Commissioner's final decision. (Doc. 22 at 2). This appeal followed.

## II. Legal Standard

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). In other words, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is

susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see also Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation and citation omitted).

Finally, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied on in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). On appeal, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n.1 (9th Cir. 2000) (en banc), *vacated and remanded on other grounds*, 535 U.S. 391 (2002)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (applying the principle to Social Security appeal). The Ninth Circuit's reasoning is that courts "will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim." *Arpin*, 261 F.3d at 919 (internal citation omitted).

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show that, among other things, she is "under a disability." 42 U.S.C. § 423(a)(1)(E) (2012). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

A person is under a disability only if that person's "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### B. The Five-Step Process

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick*, 157 F.3d at 721. A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.*

§ 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's "residual functional capacity" ("RFC") is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This

includes medical opinions, records, self-reported symptoms, and third-party reporting. *See* 20 C.F.R. §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

### C. The ALJ's Evaluation under the Five-Step Process

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, satisfying step one of the inquiry. (Doc. 16-3 at 26). At step two, the ALJ found that Plaintiff has severe impairments including: obesity, diabetes and degenerative joint disease in the knees and shoulder. *Id*. At step three, the ALJ found that Plaintiff's impairment or combination of impairments did not meet or medically equal any of the listed impairments in the Social Security regulations that automatically result in a finding of disability. *Id.* at 28.

Before moving on to step four, the ALJ conducted an RFC determination in light of Plaintiff's testimony and objective medical evidence. *Id.* at 142–46. The ALJ found that Plaintiff has the RFC to "perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently stoop, kneel, crouch, crawl, and climb ladders and/or scaffolds; and occasionally climb ladders, ropes, and/or scaffolds. The claimant is limited in to frequent reaching overhead with the 1ight extremity." (Doc. 16-3 at 29).

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a cashier and the Plaintiff was not disabled under the Social Security Act. *Id.* at 33. Consequently, because the ALJ concluded at step four that the Plaintiff was capable of performing past relevant work, the ALJ did not proceed to step five. *Id*.

## III. Discussion

Plaintiff asserts that the ALJ erred in denying her benefits for three reasons: (1) the ALJ's finding that Plaintiff could perform past relevant work was unsupported by the medical evidence; (2) the ALJ did not give adequate reasons for discrediting Plaintiff's pain and symptom testimony; and (3) the ALJ did not give adequate consideration to all of the medical opinion evidence.

### A. Ability to Perform Past Work

At step four, the ALJ found that Plaintiff is capable of performing past relevant

work as a cashier. (Doc. 16-3 at 33). Plaintiff argues that this finding is unsupported by the medical evidence. (Doc. 21 at 1); (Doc. 25 at 2).

### 1. Legal Standard

At step four, "claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto*, 249 F.3d at 845. "To determine whether a claimant has the [RFC] to perform [her] past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then compare the demands with [her] present capacity." *Villa v. Heckler*, 797 F.2d 794, 797–98 (9th Cir. 1986); *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990). "This requires specific findings as to the claimant's [RFC], the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Pinto*, 249 F.3d at 845.

### 2. Analysis

The ALJ found Plaintiff retained the RFC to perform her past relevant work as a cashier. The ALJ relied on the vocational expert's testimony that, although Plaintiff "could not perform the home attendant, pizza maker, and stock clerk positions because the jobs exceed her light level of exertion[,]" the Plaintiff could perform the positions of security guard and cashier "because they have a compatible level of exertion and do not require postural movements in excess of the residual functional capacity." (Doc. 16-3 at 33).

On appeal Plaintiff argues that the ALJ and vocational expert did not properly consider her inability to stand for long periods of time and they did not consider her need to rest after periods of minimal exertion. (Doc. 25 at 2). These claims are based on Plaintiff's pain and symptom testimony. However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible[.]" (Doc. 16-3 at 31). Therefore, a Plaintiff's allegation concerning the

reasonableness of the ALJ's step four determination depends on whether the ALJ's adverse credibility finding was supported by substantial evidence.

### 3. Credibility of Plaintiff's Pain and Symptom Testimony

Plaintiff argues that the ALJ did not give adequate reasons for discrediting Plaintiff's pain and symptom testimony. Plaintiff specifically disputes the ALJ's analysis and conclusions drawn from the objective medical evidence and the Plaintiff's activities of daily living.

#### a. Legal Standard

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3)

the claimant's daily activities." *Smolen*, 80 F.3d at 1284; *see also Orn*, 495 F.3d at 637–39. The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms[.]" *Smolen*, 80 F.3d at 1284 (citation omitted).

### b. Analysis

The ALJ found that Plaintiff's daily activities at issue include: caring for her husband and children, occasionally preparing meals, doing laundry, washing dishes, cleaning the living room, driving, shopping, and handling finances. (Doc. 16-3 at 28). Plaintiff does not dispute that she is able to perform the referenced activities, but does dispute that such activities demonstrate that she can work, given her testimony that she cannot do any of these tasks for extended periods of time. Plaintiff testified that after approximately ten (10) to fifteen (15) minutes of activity, Plaintiff needs to rest to alleviate her pain. (Doc. 16-3 at 63–34). Additionally, Plaintiff testified that, in order to relieve her pain, she frequently needs to lie down and elevate her legs. *Id*. Nonetheless, the ALJ concluded that the claimant is capable of performing past relevant work as a cashier. (Doc. 16-3 at 34). The ALJ based his opinion on the vocational expert's testimony. However, when asked whether a cashier would be permitted to lie flat fifteen (15) to twenty (20) minutes per day or whether a cashier would be permitted to elevate her legs during the workday, the vocational expert opined that such needs would preclude Plaintiff from performing that job. (Doc. 16-3 at 76). Accordingly, although not explicit in his opinion, the ALJ did not credit Plaintiff's testimony concerning her need to rest frequently and her need to elevate her legs because of the constant pain she experiences.

The ALJ followed the two-step process required to consider the Plaintiff's symptoms. (Doc. 16-3 at 29). First, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 16-3 at 31). However, under the second step, the ALJ found Plaintiff's "statements

concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible[.]" *Id*. The ALJ explained that Plaintiff's "activities of daily living suggest that the claimant's impairments are not as severe as alleged. The claimant cares for her husband and children, can prepare meals, do laundry, wash dishes, clean the living room, drive, shop, and handle finances. This shows that the claimant can be responsible, is mobile, independent, and can complete simple tasks." *Id*. (citations omitted).

Additionally, although the ALJ found that the objective evidence and treatment record suggested difficulty and impairment with the Plaintiff's shoulder, knees, back, and wrists but, according to the ALJ, the medical record did not to support the severity alleged by the Plaintiff. (Doc. 16-3 at 31–32). *Id*. Furthermore, in reaching his adverse credibility determination, the ALJ cited the opinions of the examining physicians. Specifically, the ALJ's determination relied on the opinion of Dr. Levinson who "believed that the claimant was markedly exaggerating her limitations during the evaluation." (Doc. 16-3 at 31). The ALJ also cited Dr. Nadine Keer, who opined that the Plaintiff "could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds" and "could stand, walk, and/or sit each for 6 hours in an 8-hour workday." (Doc. 16-3 at 33).

Thus, the ALJ relied on multiple other factors for discounting the Plaintiff's pain and symptom testimony, including the opinion testimony of the consultative doctors and the evidence in the medical records. Accordingly, because the question presented to this Court is whether there is substantial evidence that supports the ALJ's decision, *see Hammock*, 879 F.2d at 501, the Court affirms the ALJ's finding concerning the Plaintiff's symptom testimony.

### 4. Medical Opinion Evidence

#### a. Legal Standard

With respect to medical testimony specifically, the Ninth Circuit Court of Appeals distinguishes between the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant

("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). As a general rule, the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician, but less than a treating physician. *Andrews v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995).

An "ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).

> Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). However, the ALJ can reject the opinion of a treating physician in favor of the conflicting opinion of another examining physician "if the ALJ makes 'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Id.* at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

*Connert v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

An "ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Further, "incongruity between [a doctor's opinion] and [his] medical records" is a "specific and legitimate reason for rejecting" the doctor's opinion. *Tommasetti*, 533 F.3d at 1041.

When reviewing an ALJ's determination, the Court must uphold an ALJ's decision—even if the ALJ could have been more specific in the opinion—if the Court can reasonably infer if and why the ALJ rejected an opinion. *Magallanes*, 881 F.2d at 755; *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal quotations omitted). Moreover, "if evidence exists to support more than one rational interpretation, [the Court] must defer to the [ALJ's] decision" *Batson*, 359 F.3d at 1193; *see also Osenbrock v. Apel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

### b. Opinions of Record

Plaintiff argues that the ALJ improperly evaluated the medical evidence, giving more weight to the opinions of reviewing and examining physicians rather than Plaintiff's treating providers. (Doc. 21 at 1); (Doc. 25 at 1). Here, the ALJ afforded "great weight" to the opinion of Brent B. Geary, Ph.D., because he was the only psychological examiner, he provided an examination with cognitive testing, he made conclusions consistent with the testing, he offered an explanation, and the opinion was consistent with the Plaintiff's activities of daily living. (Doc. 16-3 at 32).[1] Likewise, the ALJ afforded "great weight" to the Disability Determination Reconsideration opinion of Nadine Keer, D.O., because, according to the ALJ, the opinion most accurately assessed all of the medical records and the opinion was most consistent with the treatment records, the objective evidence, and the Plaintiff's activities of daily living. (Doc. 16-3 at 33). The ALJ afforded "some weight" to the opinion of Jeffrey Levinson, M.D., because he provided an examination, he made conclusions consistent with the examination, and he provided an explanation; however, the ALJ did not afford his opinion "great weight" because Dr. Levinson did not have the most recent treatment notes and x-rays. (Doc. 16-3 at 32). The ALJ also afforded "some weight" to the Initial Disability Determination opinion of Jean Georss, M.D., for the same reasons discussed for Dr. Levinson. (Doc. 16-3 at 33). The opinions that the ALJ assigned "some weight" or "great weight" all essentially opined that Plaintiff's pain and symptoms were not as severe as Plaintiff claimed and that, although Plaintiff has some significant limitations, Plaintiff was not disabled.

The ALJ gave "little weight" to the opinion of Plaintiff's family nurse practitioner, Cynthia Aponte, because, although a nurse practitioner's opinion may be entitled to "some weight," the ALJ concluded that giving Nurse Practitioner Aponte's opinion much

---

[1] In her opening brief, Plaintiff appeals the ALJ's failure to credit Dr. Geary's opinion. (Doc. 21 at 2). Specifically, Plaintiff states, "… in 2012 Dr. Brent B. Geary states I was unable to work for 12 months consecutively." (Id.). The Court has reviewed Dr. Geary's consulting examination notes, and finds that Dr. Geary never opined that Plaintiff could not work. (See Doc. 16-8 at 180-185). Further, the ALJ said he gave the opinion of Dr. Geary "great weight". (Doc. 16-3 at 32). Therefore, the Court finds there is no error regarding the weight given to the opinion of Dr. Geary.

weight was not justified because her opinion was: (1) vague and conclusory, (2) did not provide specific functional limitations in a vocationally appropriate manner, and (3) was inconsistent with both Plaintiff's activities of daily living and the most recent DDS evaluator's opinion. (Doc. 16-3 at 33).

### c. New Medical Evidence

Plaintiff attached to her opening brief, (Doc. 21), a number of medical statements that appear to be written on forms used to seek some sort of benefits. (Doc. 21 at 4–11). The substance and form of these statements are similar to the opinion provided by Nurse Practitioner Aponte. Most of the statements are from nurse practitioners and one statement is from a doctor. All of the new statements conclude that Plaintiff has a mental or physical incapacity which prevents her from performing any substantially gainful employment. These new statements were not provided to the ALJ before he rendered his opinion.

The Court agrees with Defendant that the issue Plaintiff has raised to the Court falls under "sentence six" of 42 U.S.C. § 405(g), the section of the Act providing for district court review of the Social Security Administration's ("SSA") final decision. It provides, in relevant part:

> The Court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). Neither the ALJ nor the Appeals Council took these new opinions into account or included them in the administrative record. *See* 20 C.F.R. § 404.970(b) Thus, any order of this Court in Plaintiff's favor on this issue would be a remand for the SSA to take the new evidence into account in making the disability determination. On this record, the Court cannot itself take the new evidence into account, make a disability determination, and reverse the SSA determination. *Cf. Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012) (noting that the district court must take

weight was not justified because her opinion was: (1) vague and conclusory, (2) did not provide specific functional limitations in a vocationally appropriate manner, and (3) was inconsistent with both Plaintiff's activities of daily living and the most recent DDS evaluator's opinion. (Doc. 16-3 at 33).

### c. New Medical Evidence

Plaintiff attached to her opening brief, (Doc. 21), a number of medical statements that appear to be written on forms used to seek some sort of benefits. (Doc. 21 at 4–11). The substance and form of these statements are similar to the opinion provided by Nurse Practitioner Aponte. Most of the statements are from nurse practitioners and one statement is from a doctor. All of the new statements conclude that Plaintiff has a mental or physical incapacity which prevents her from performing any substantially gainful employment. These new statements were not provided to the ALJ before he rendered his opinion.

The Court agrees with Defendant that the issue Plaintiff has raised to the Court falls under "sentence six" of 42 U.S.C. § 405(g), the section of the Act providing for district court review of the Social Security Administration's ("SSA") final decision. It provides, in relevant part:

> The Court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). Neither the ALJ nor the Appeals Council took these new opinions into account or included them in the administrative record. *See* 20 C.F.R. § 404.970(b) Thus, any order of this Court in Plaintiff's favor on this issue would be a remand for the SSA to take the new evidence into account in making the disability determination. On this record, the Court cannot itself take the new evidence into account, make a disability determination, and reverse the SSA determination. *Cf. Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012) (noting that the district court must take

new evidence into account if it was already considered by the Appeals Council and included as part of the administrative record).

"Under 42 U.S.C. § 405(g), in determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." *Mayes v. Massanari*, 276 F.3d 453, 461 (9th Cir. 2001). New evidence is material if it bears "directly and substantially on the matter in dispute." *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982) (internal quotation and citation omitted). The claimant must also demonstrate "a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Mayes*, 276 F.3d at 462. To meet the good cause requirement, the claimant must demonstrate that the new evidence was unavailable at the time of the administrative proceeding and explain why she did not seek the expert's opinion earlier. *Id.* at 463; *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied"); *Sanchez v. Sec. of Health and Human Servs.*, 812 F.2d 509, 512 (9th Cir. 1987) (holding that the applicant lacked good cause to remand for consideration of two psychological examinations prepared after the applicant's disability determination when the attorney knew of the applicant's memory loss but failed to explain why the applicant had not requested a mental evaluation or pressed his mental impairment claim at the hearing before ALJ).

Here, the ALJ already considered the opinions of Nurse Practitioner Aponte. The opinions of Nurse Practitioner Maria De Guzman, Nurse Practitioner Peggy Bradley, and the opinion from Plaintiff's doctor pertain to treatment occurring after the ALJ's February 3, 2015 decision. Although the opinion provided by Nurse Practitioner Lynn Prendhomme pertains to treatment occurring before the ALJ's decision, Plaintiff has failed to demonstrate good cause for not making this opinion available prior to the ALJ

decision. Accordingly, the Court agrees with Defendant that Plaintiff has failed to meet the materiality and good cause requirements necessary for the Court to order the SSA to accept the proposed new evidence under "sentence six" of 42 U.S.C. § 405(g).

### d. Nurse Practitioner Aponte

The ALJ gave Nurse Practitioner Aponte's opinion little to no weight because her opinion was an "other source" and, according to the ALJ, Nurse Practitioner Aponte's opinion was "vague, conclusory," and did not "provide specific functional limitations in a vocationally appropriate manner." (Doc. 16-3 at 33). Further, the ALJ found that the opinion was inconsistent with Plaintiff's "activities of daily living, and the most recent DDS evaluator's opinion." *Id.*

### i. Legal Standard

While nurse practitioners are not "acceptable medical sources" for establishing an impairment, 20 C.F.R. §§ 404.1513(a), 416.913(a), they are nonetheless considered an "other" medical source whose testimony may be used "to show the severity of . . . impairment(s) and how it affects [the] ability to work." 20 C.F.R. § 404.1513(d)(1). Opinions from nurse practitioners may be given less weight than opinions from acceptable medical sources and discounted if the opinion conflicts with medical evidence, but the ALJ is required to give "specific reasons germane to each witness for discounting that testimony." *Blodgett v. Comm'r of Soc. Sec. Admin.*, 534 F. App'x 608, 610 (9th Cir. 2013) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *Coffman v. Astrue*, 469 Fed. Appx. 609, 611 (9th Cir. 2012) ("Testimony from 'other sources,' such as nurse practitioners, can be disregarded for germane reasons."); *Rusten v. Comm'r of Social Sec. Admin.*, 468 Fed. Appx. 717, 720 (9th Cir. 2012) ("A nurse practitioner is an 'other source' for the purposes of medical testimony, and as such, his opinion cannot be used to establish a medical impairment. An ALJ can give less weight to an 'other source' medical opinion by providing reasons germane to each witness for doing so.") (internal citations and quotations omitted).

Recently, in *Popa v. Berryhill*, the Ninth Circuit Court of Appeals found that the

ALJ's failure to credit of the nurse practitioner's opinion was not justified in light of the prominent role that the nurse practitioner played in the claimant's medical treatment. 872 F.3d 901, 907 (9th Cir. 2017). In *Popa*, the nurse practitioner treated the claimant for nearly eighteen (18) months prior to the claimant's residual capacity assessment. *Id. See also Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) (holding that, although a nurse practitioner was not an "acceptable medical source," she was still an "other source" thus there were "strong reasons to assign weight to her opinion" because the nurse practitioner was "a treating source who examined [the claimant] at least ten times over two years.")

### ii. Other Source

As stated above, the ALJ gave little weight to Nurse Practitioner Aponte's opinions because she was an "other source." The regulations allow for the ALJ to weigh the opinion of a nurse practitioner more heavily than the opinion from an acceptable medical source "[d]epending on the particular facts of the case, and after applying the factors for weighing opinion evidence[.]" 20 C.F.R. § 416.927(f)(1). Under Social Security Ruling 06-03p:

> [A]n opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

SSR 06-03p, 71 Fed. Reg. 45593, 45596 (Aug. 9, 2006). SSR 06-03p provides a non-exhaustive list of "factors for considering opinion evidence" of medical sources who are not "acceptable medical sources." The factors include:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

*Id*. at 45595.

Thus, whether the ALJ properly gave little weight to Nurse Practitioner Aponte as an "other source" depends on the other reasons given for not crediting her opinion.

### iii. Vague and Conclusory

Additionally, as discussed above, the ALJ discounted Nurse Practitioner Aponte's opinion because it was vague and conclusory. In *Popa,* the Ninth Circuit Court of Appeals found that "the fact [a nurse practitioner], an 'other source,' provided information in a check-box form provides no reason to reject her opinions, much less a germane reason." *Popa*, 872 F.3d at 907. However, in numerous other cases, the Ninth Circuit Court of Appeals has held that a doctor using only a check-box form was a specific and legitimate reasons to not fully credit the doctor's opinion. *See e.g. Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[An] ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (internal punctuation and citations omitted).

Here, Nurse Practitioner Aponte's opinion was presented in the form of a "check-box" opinion, where Nurse Practitioner Aponte checked "yes" to the question: "Does this person have a mental or physical incapacity which prevents him/her from performing any substantially gainful employment for which he/she is qualified?" (Doc. 16-9 at 39). The ALJ found that Nurse Practitioner Aponte's opinion was "conclusory and vague." (Doc. 16-3 at 33). Thus, whether the check-box form as the diagnosis method is sufficiently vague and conclusory such that it is a germane reason to give little weight to Nurse Practitioner Aponte's opinion depends on the treatment records and findings (if any) that support the check-box form. The ALJ had access to this history and nonetheless found the diagnosis to be too vague and conclusory to be entitled to any weight. As this Court cannot substitute its judgment for that of the ALJ, the Court will not overturn the ALJ's

finding that the opinion was vague and conclusory. *Gallant*, 753 F.2d at 1453; *Batson*, 359 F.3d at 1193. Further, such a finding is a germane reason to not fully credit Nurse Practitioner Aponte's opinion.

### iv. Inconsistency with Daily Activities

The ALJ next discounted Nurse Practitioner Aponte's opinion because, according the ALJ, her opinion was "inconsistent with the claimant's activities of daily living." Specifically, the ALJ found Plaintiff's daily activities include: caring for her husband and children, occasionally preparing meals, doing laundry, washing dishes, cleaning the living room, driving, shopping, and handling finances. (Doc. 16-3 at 28). Because Nurse Practitioner Aponte's opinion was conclusory and did not "provide specific functional limitations in a vocationally appropriate manner" the ALJ concluded that the breadth of Plaintiff's daily activities was inconsistent with Nurse Practitioner Aponte's conclusion that Plaintiff is unable to work. This is a germane reason to not give weight to Nurse Practitioner Aponte's conclusions.

## IV. Conclusion

For the reasons stated above,

**IT IS ORDERED** that the Commissioner's decision denying benefits is **affirmed**. The Clerk of the Court shall enter judgment accordingly.[2]

Dated this 15th day of May, 2018.

James A. Teilborg
Senior United States District Judge

---

[2] To the extent a mandate is required, the judgment shall serve as the mandate in this case.